**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TAMMY L. BRANNON, ) | CASE NO.  1:15-CV-904 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | (Doc. No. 24) |

This case is before the Magistrate Judge by the consent of the parties.  (Doc. No. 14.)  On April 26, 2016, Plaintiff, Tammy L. Brannon ("Plaintiff"), through her attorney, Howard Olinsky, filed a motion for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), in the amount of $7,769.32.  (Doc. No. 24.)  Defendant, Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"), opposes Plaintiff's motion.  (Doc. No. 27.)  For the reasons set forth below, Plaintiff's motion for EAJA fees is GRANTED in part and DENIED in part, *i.e.*, Plaintiff shall be awarded $5,298.84 to fully satisfy all reasonable attorney's fees, expenses, and costs incurred under EAJA.

**I. BACKGROUND**

On May 7, 2015, Plaintiff filed her complaint to challenge the Commissioner's final decision denying her applications for Social Security disability benefits.  (Doc. No. 1.)  Plaintiff asserted the following assignments of error: (1)(A) the ALJ failed to give good reasons for discounting the opinion of treating physician Dr. Patel; (1)(B) the ALJ failed to consider Plaintiff's non-exertional limitations relating to her fibromyalgia and

depression with anxiety; and (2) the ALJ's credibility determination was not supported by substantial evidence and was the product of legal error.  (Doc. No. 18.)

In March 2016, the Court reversed and remanded the case principally on the basis of the Plaintiff's first assignment of error, although it also required the ALJ to address on remand several of the issues raised by Plaintiff's other arguments.  With regard to Plaintiff's first assignment of error, the Court concluded that, in determining Plaintiff's residual functional capacity "("RFC"), the ALJ erred when he failed to explain the basis of his rejection or omission of certain limitations assigned by treating physician Dr. Patel.  The Court explained, in relevant part, as follows:

> As stated above, Plaintiff does not specifically identify which of Dr. Patel's limitations the ALJ improperly rejected.  The ALJ's finding that Plaintiff could stand/walk for 2 hours in an 8-hour workday is consistent with Dr. Patel's opinion.  **Nevertheless, the ALJ apparently did reject Dr. Patel's opinion that Plaintiff could sit for only 3 hours, Dr. Patel's lifting restrictions, and the bulk of the manipulative restrictions.6 (Tr. 23, 587- 88.)  The ALJ also did not find credible the need for additional breaks or Dr. Patel's predicted absenteeism, as those limitations were not incorporated into the RFC.  (Tr. 23.)**
>
> Plaintiff argues that Dr. Patel's alleged lack of knowledge of the medical-vocational guidelines was an insufficient reason for rejecting the functional limitations he assessed.  (Doc. No. 18 at 23-24.) Standing alone, this Court agrees that a treating physician's lack of familiarity with social security regulations is an insufficient basis for rejecting an opinion. If such a statement were enough, it could be universally be invoked to discredit a treating source's opinion.  Furthermore, this is not a case where a treating source simply opines that a patient is unemployable or disabled.  Rather, Dr. Patel's opinion contains specific functional limitations.
>
> Plaintiff avers that the ALJ gave less weight to Dr. Patel's opinion because of its inconsistencies when compared to the opinion of Plaintiff's gynecologist, Dr. Masri.  (Doc. No. 18 at 22.)  . . . The Court does not agree with Plaintiff's dubious interpretation of the decision.  The ALJ plainly found that both physicians' opinions were entitled to less weight as

2

> they were both inherently inconsistent – not because the two opinions were inconsistent with one another. . . However, while the ALJ clearly believed such inherent inconsistencies existed, the decision does not actually identify those inconsistencies.
>
> The ALJ also pointed out that post-operative treatment notes yielded normal physical examination results and that Plaintiff had a positive response to chiropractic treatment.  (Tr. 27, citing Exhs. 3F, 4F, 9F, 13F & 20F.)  Again, the ALJ makes no meaningful effort to explain how the cited portions of the record undermine Dr. Patel's opinion.  There is case law supporting the general proposition that an ALJ's broad statement rejecting a treating physician's opinion without giving specific reasons for rejecting it requires remand.  [citations omitted].  By simply pointing to the medical records that ostensibly support rejection of Dr. Patel's opinion without offering a corresponding explanation or analysis, the ALJ essentially invites a reviewing court to perform its own *de novo* review of the record and to flesh out its own rationale as to why Dr. Patel's opinion should be rejected.  **Further, this is not a case in which the ALJ's discussion of other medical evidence and opinions in the record provides a clear basis for rejecting the treating physician's opinion**. **[citation omitted].  While the ALJ's discussion of other evidence is significant, it does not lend any insight as to why Dr. Patel's opinion was undeserving of significant weight.**
>
> Finally, the ALJ found that Dr. Patel's May 2013 opinion did not provide sufficient evidentiary support for the exertional and non-exertional limitations assessed.  (Tr. 27.)  "Supportability" is one of the factors specifically set forth in the regulation. 20 C.F.R. § 404.1527(c)(3) . . . It is true that Dr. Patel's May 2013 opinion does not delve into any great detail as what signs or findings support the severe limitations assessed. It simply sets forth Plaintiff's diagnoses and indicates her symptoms cause "pain in various joints."  (Tr. 587-88.)  In her reply brief, Plaintiff asserts that requiring an explanation "elevates form over substance" because the "copious treatment records" obviate the need for an explanation.  (Doc. No. 21 at 2-3.)  The Court does not agree that the supportability factor is inapplicable because a treating source's treatment notes have been made part of the record.  Nevertheless, the ALJ's mere statement that an opinion lacks evidentiary support, without some attempt at explanation, is insufficient.

(Doc. No. 22 at 16-19) (emphasis added; footnotes omitted).  Accordingly, the Court

found that the ALJ decision "neither sufficiently describes to Plaintiff the basis for the

3

ALJ's conclusions concerning his treating doctor, nor provides this Court with adequate material to conduct a meaningful review." (*Id.* at 19.) On remand, the Court ordered the ALJ to "offer an explanation as to the weight ascribed to Dr. Patel's opinions, including his diagnosis of fibromyalgia (see below), that comports with social security regulations." (*Id.* at 19-20.)

As remand was required on the basis of Plaintiff's first assignment of error, the Court only briefly addressed Plaintiff's other arguments. With regard to Plaintiff's argument that the ALJ failed to account for her fibromyalgia, the Court found that, on remand, "the ALJ should at least acknowledge that such a diagnosis exists and explain what, if any, weight is given to such a diagnosis and whether any limitations are necessary to account for such a condition." (*Id.* at 20-21.) As to Plaintiff's mental limitations, the Court concluded that "it is less than clear from the [ALJ] decision whether the ALJ actually incorporated the limitations assessed by [psychological consultative examiner] Dr. Smith into the RFC, or whether those limitations were rejected due to Plaintiff's improvement with mental health treatment."[1] (*Id.* at 22.)

On April 26, 2016, Plaintiff filed her application for attorney fees pursuant to the EAJA. (Doc. No. 24.) In her initial application, she requests $7,769.32 in attorney fees, representing a total of 46.55 hours of services rendered. (Doc. No. 24-1 at 2.) This

---

[1] The Court found Plaintiff's credibility argument to be moot, noting that "[a]s the issue of whether Plaintiff suffers from fibromyalgia will be addressed on remand in a new decision, the ALJ's decision on that issue may very well impact the credibility of Plaintiff's allegations of disabling pain." (*Id.* at 23.)

4

number consists of: (1) 37.7 hours expended by her attorneys[2] on the merits of the appeal; (2) 0.75 hours expended by Attorney Olinsky on the EAJA application; and (4) 8.1 hours expended by counsels' paralegals (which consists of 5.4 hours on the merits of the appeal and 2.7 hours on the EAJA application) (Doc. Nos. 24-4, 24-5.)  Plaintiff requests an hourly rate of $185.21 for her attorneys, and $80.00 for paralegal assistance.  (Doc. No. 24-1 at 2.)

Thereafter, the Commissioner filed her response in opposition to Plaintiff's motion.  (Doc. No. 27.)  The Commissioner argues an EAJA award is not warranted because her position was substantially justified.  She further requests that, if the Court finds her position was not substantially justified, Plaintiff's requested fees under the EAJA should be reduced to $5,454.25 to reflect an hourly rate of $125 for work performed by attorneys, rather than the $185.21 hourly rate requested by Plaintiff in her motion.[3]  (*Ia.*)

In May 2016, Plaintiff filed a reply in support of her fees application.  (Doc. No. 29.)  In addition to addressing the Commissioner's arguments, Plaintiff requests a supplemental award of attorney fees of $370.42, representing two hours expended by Attorney Olinsky in researching and preparing the reply.  (*Id.* at 6.)  Accordingly, Plaintiff requests a total of $8,139.74 in attorney fees in this case.

## II.  LAW AND ANALYSIS

The EAJA permits the Court to award fees and other expenses to a prevailing

---

[2] Several attorneys appear to have worked on Plaintiff's appeal, including Howard Olinsky, Paul Eaglin, and Nathaniel Riley.  (Doc. No. 24-4.)

[3] The Commissioner does not challenge the hourly rate of $80 requested with respect to the work performed on this matter by counsels' paralegals.  Nor does she contest the number of hours worked, either by counsel or paralegals.

party in a civil action against the United States unless the United States' position was substantially justified or other special circumstances exist. *See* 28 U.S.C. § 2412(d)(1)(A). A plaintiff is the "prevailing party" when he or she succeeds on any significant issue in the litigation resulting in the benefit of a remand. *Shalala v. Schaefer*, 509 U.S. 292, 302 (1993); *Olive v. Comm'r of Soc. Sec.*, 534 F. Supp. 2d 756, 758 (N.D. Ohio 2008) (Katz, J.). Here, there is no dispute that Plaintiff is the "prevailing party," as the Court entered judgment in Plaintiff's favor and remanded the case. The Commissioner, however, contends that: (1) Plaintiff is not entitled to attorney fees in this case because the Commissioner's position was substantially justified; and (2) in the alternative, if Plaintiff is entitled to fees, her fee request must be reduced because the hourly rate requested for work performed by counsel is excessive.

**A.     Whether the Commissioner's Position was Substantially Justified**

Substantially justified means "justified to a degree that could satisfy a reasonable person." *Noble v. Barnhart*, 230 F. App'x 517, 519 (6th Cir. 2007) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). The Commissioner bears the burden of establishing that her position was substantially justified. *See Scarborough v. Principi*, 541 U.S. 401, 414 (2004); *E.W. Grobbel Sons, Inc. v. Nat'l Labor Relations Bd.*, 176 F.3d 875, 878 (6th Cir.1999). In other words, a "[p]laintiff is presumptively entitled to attorney fees unless the government can meet its burden of showing that the position of the United States was substantially justified or that special circumstances make an award unjust." *Olive*, 534 F. Supp. 2d at 758. The government discharges its burden of proving that its position was substantially justified by "proving that the position had a reasonable basis both in law and fact." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723,

6

725-26 (6th Cir. 2014) (internal citation and quotation marks omitted).

The Commissioner argues her position was substantially justified because the error that warranted remand was merely an "articulation error" and "the Commissioner's overall position was supported in both law and fact."  (Doc. No. 27 at 4-5.)  Plaintiff contends the error in this case was more than a mere articulation error.  (Doc. No. 29 at 1-5.)  She notes this Court expressly found that "this is not a case in which the ALJ's discussion of other medical evidence and opinions in the record provides a clear basis for rejecting the treating physician's opinion."  (Doc. No. 29 at 1-5.)  In addition, Plaintiff emphasizes this Court's determination that the ALJ failed to reconcile the opinion of consultative examiner Dr. Smith with the RFC.  (*Id.*)

Plaintiff's entitlement to attorney fees in this case depends upon whether the errors identified by this Court as the basis for remand were merely errors in articulation, or substantive errors.  The Sixth Circuit has determined that "an ALJ's failure to provide an adequate explanation for his findings does not establish that a denial of benefits lacked substantial justification."  *Delong*, 748 F.3d at 727.  In *DeLong*, the district court remanded the plaintiff's case to the agency for further administrative proceedings, noting the ALJ had failed to provide good reasons for discounting the opinion of a treating physician, as required by 20 C.F.R. § 404.1527(c)(2).  In remanding the case, the district court observed that "[t]he record did *not* strongly establish" the plaintiff's entitlement to benefits.  748 F.3d at 726 (emphasis and alternation in original).

Thereafter, the plaintiff filed an application for EAJA fees, which the district court denied.  On plaintiff's appeal, the Sixth Circuit affirmed the district court's order, explaining that the error identified by the district court was in the ALJ's failure to explain

7

the weight he assigned to the various medical opinions, rather than in the substantive issue of whether the ALJ properly considered them:

> As the District Court recounted, "[T]he fatal flaw in the ALJ's opinion [wa]s *not* in the weight he found appropriate for the various medical opinions," but rather in his failure to *explain* his findings adequately.  The District Court thus vacated the ALJ's decision and remanded DeLong's case on this procedural error rather than on substantive grounds.
>
> * * *
>
> Here, contrary to DeLong's assertions, the ALJ did not ignore the opinions of DeLong's treating physicians.  As the record reflects, even where the ALJ did not reference certain physicians by name, he included in his analysis operations they had performed and records they had produced.

*Id.* at 727 (emphasis in original).  The decision in *DeLong* relied, in part, on the fact that, while the ALJ may not have adequately explained his decision to assign a particular weight to a medical opinion at the precise location in his decision where he addressed the issue of weight, the rest of the ALJ's opinion adequately supported his finding with respect to that issue.  The Sixth Circuit's reasoning in *DeLong* reflects the reality of administrative decisions in this context: although an ALJ may fail to provide an adequate explanation of his or her conclusion regarding an issue at a specific point in the relevant decision, review of the decision as a whole will sometimes support his or her conclusion on that issue.  It is this narrow class of cases that constitute "mere articulation errors" in which the Commissioner's position was substantially justified.  *See Escobar v. Colvin,* 2015 WL 4041845 at * 4 (N.D. Ohio July 1, 2015) (Vecchiarelli, M.J.); *Irizarry v. Colvin,* 2015 WL 3755978 at * 4 (N.D. Ohio June 16, 2015) (Vecchiarelli, M.J.).

Here, the Commissioner contends that the primary error identified by this Court as

8

the basis for remand in this case arose out of the level of articulation provided by the ALJ. (Doc. No. 27 at 1-5.) That is not, however, an accurate description of this Court's analysis in this case. As this Court discussed in its Order remanding this case, here, the ALJ failed to adequately address not only a number of the physical limitations assessed by treating physician Dr. Patel, but also the mental limitations assessed by consultative examiner Dr. Smith. In other words, and with respect to both Dr. Patel and Dr. Smith, nothing in the ALJ's decision explained the omission of those limitations from Plaintiff's RFC. The ALJ's failure to provide any explanation – at any point in his decision – for the omission of those limitations not only violated a well-established rule, *see Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (Lioi, J.), but also resulted in an RFC that was inconsistent with the ALJ's stated analysis of the medical evidence in the record – a substantive error that rendered this issue unreviewable by this Court. *See, e.g., Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (finding that the Commissioner's position was not substantially justified where "[s]everal of the ALJ's errors in analysis were plainly contrary to law'). Accordingly, this case does not fall into the small category of cases described in *DeLong*.

The Commissioner also argues her position was substantially justified because her "underlying position had a reasonable basis both in law and in fact." (Doc. No. 27 at 6.) The Court disagrees. Here, the Court identified multiple errors in the ALJ's analysis, including the failure to properly address two physician opinions and the failure to acknowledge or address Plaintiff's fibromyalgia diagnosis. The Commissioner failed to meet its burden of proving that it was substantially justified in opposing remand of "such an error-ridden benefit determination." *Glenn*, 763 F.3d at 499 ("Here, the law and the

9

facts required remand five times over, giving the government five separate bases for requiring the ALJ to reconsider Glenn's claim in accordance with the law.  This 'string of losses' indicates that the ALJ's opposition to remand was not substantially justified.")

Accordingly, the Commissioner's argument lacks merit.  In this case, the Commissioner's position was not substantially justified and, thus, Plaintiff is entitled to attorney fees.

**B.     Whether Plaintiff's Counsels' Hourly Rate is Reasonable**

The EAJA provides that "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished," and "fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A); *see* Bryant v. Comm'r of Soc. Sec., 578 F.3d 443, 449-50 (6th Cir. 2009).  Here, Plaintiff seeks EAJA fees for Counsel's work at an hourly billing rate of $185.21 per hour—an upward departure from the $125.00 cap – based an increase in the cost of living caused by inflation since 1996.

In requesting an increase beyond the $125.00 per hour rate cap under EAJA, plaintiffs bear the burden of producing appropriate evidence to support the requested increase.  *Bryant*, 578 F.3d at 450.  That is, plaintiffs "must produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).  It is within the Court's discretion to award EAJA fees at a rate

10

greater than $125.00 per hour.  See Begley v. Sec'y of Health & Human Servs., 966 F.2d 196, 199 (6th Cir.1992).  However, the Sixth Circuit has held that the CPI, alone, is insufficient evidence to warrant an award of EAJA fees at a rate greater than $125.00.  Bryant, 578 F.3d at 450.

In her initial Application, Plaintiff provides the following information in support of her request for a cost-of-living increase:  (1) time sheets reflecting the work performed by her counsel and paralegals with respect to Plaintiff's appeal in this Court; and (2) a table from the Bureau of Labor and Statistics indicating an increase in the value of "all items" over time.  (Doc. Nos. 24-2, 24-3, 24-4, 24-5.)  Plaintiff then states, in Exhibit A to her Application (Doc. No. 24-2), that the appropriate hourly billing rate under EAJA for services rendered each year is determined by dividing the United States Bureau of Labor and Statistics' Consumer Price Index ("CPI")[4] for the year in which services were rendered (i.e., the CPI for 2015) by the CPI for March 1996, and then multiplying by $125.  See also Lopez v. Comm'r of Soc. Sec., No. 3:08-cv-2148, 2010 WL 1957422, at *3 (N.D. Ohio May 14, 2010) ("The Magistrate has routinely calculated the cost of living adjustment by accounting for increases in the cost of living between the time the $125 fee was enacted and the time that the fee was earned . . . by comparing the CPI from March 1996 . . . to the average annual CPI during the year that counsel rendered his or her services.").  Plaintiff's calculation of her requested cost-of-living increase is based on the "Midwest urban" CPI for "all items" for "all urban consumers" in 2015, the year in

---

[4] The Bureau of Labor and Statistics' CPI calculator may be found online at http://www.bls.gov/data (last visited June 7, 2016).

which Counsel rendered services in this case.[5] Accordingly, Plaintiff asserts the EAJA rate in this case is 224.775 (the CPI for 2015) divided by 151.7 (the CPI for March 1996) and then multiplied by $125, which equals $185.21.

In her response, the Commissioner argues Plaintiff has not carried her burden of supporting her request for a cost-of-living increase because merely citing to the CPI and the rate of inflation is insufficient to merit an increase. (Doc. No. 29.)

In support of her Reply, Plaintiff provides the following additional evidence:

- A declaration from attorney Shannon Bateson, in which she states that (a) she has practiced social security disability law since 2007 and has extensive experience representing claimants before the Social Security Administration; and (b) "the market rates in the Northern Ohio areas generally equals or even exceed the rates charged by my law firm, and further, attorneys are generally not willing to accept representation of Social Security claimants in federal court at an hourly rate of $125.00 for, or anything that is much less than the $185.21 per hour which is the current EAJA hourly rate based on the Consumer Price Index– Midwest Urban." (Doc. No. 29-1.)

- A report from the Ohio State Bar Association titled "The Economics of Law Practice in Ohio, Desktop Reference for 2010," which indicates that the average hourly billing rate of attorneys in the greater Cleveland area in 2010 was $239. (Doc. No. 29-2 at p. 23.)

The Court finds Plaintiff has not submitted adequate evidence to carry her burden of supporting a cost-of-living increase to $185.21 per hour for work performed by counsel. While Plaintiff has submitted some evidence of the increase in cost and value of legal services in general, she has not adequately supported her assertions that the

---

[5] The Commissioner does not challenge Plaintiff's reliance on the Midwest-CPI in this case. This Court has found the Midwest-CPI to be the more appropriate measure of the increase in the cost of living for purposes of EAJA. *See Killings v. Colvin,* 2013 WL 1455818 at * 5 (N.D. Ohio April 9, 2013) (Vecchiarelli, M.J.); *Rodriguez v. Astrue,* 2012 WL 2905928 at * 5 (N.D. Ohio July 16, 2012) (Vecchiarelli, M.J.).

prevailing hourly rate for attorneys who practice social security law in the Cleveland, Ohio area is $185.21. In this regard, Plaintiff relies on the affidavit of Ms. Bateson. Ms. Bateson avers that she works in Columbus, Ohio and has practiced social security disability law since 2007. She states that:

> To the best of my knowledge the market rates in the Northern Ohio areas generally equals or even exceed the rates charged by my law firm, and further, attorneys are generally not willing to accept representation of Social Security claimants in federal court at an hourly rate of $125.00 for, or anything that is much less than the $185.21 per hour which is the current EAJA hourly rate based on the Consumer Price Index– Midwest Urban.

(Doc. No. 29-1 at 2.)

The Court finds Ms. Bateson's affidavit is insufficient. As an initial matter, the affidavit does not establish a foundation that Ms. Bateson has knowledge of the prevailing market rates for social security lawyers in the Cleveland area. She does not explain the extent of her practice in Northern Ohio and, further, does not provide any foundation for her alleged knowledge of the market rates for social security practitioners in this area. Moreover, Ms. Bateson does not definitively aver that the hourly rate for this field is, in fact, $185.21, stating instead only that social security attorneys are "generally not willing" to accept "anything that is much less than" $185.21. Ms. Bateson's affidavit is conclusory, equivocal, and lacking in foundation. Standing alone, it is simply insufficient to carry Plaintiff's burden of proving an increase beyond the $125.00 per hour rate cap.

Accordingly, the Court concludes Plaintiff's evidence does not adequately support a cost-of-living increase in Plaintiff's EAJA fee rate. The Court will, therefore, apply the $125 hourly rate to the work performed by Plaintiff's attorneys.

**C. Whether Plaintiff is Entitled to Fees for Work Performed to Obtain Fees on the Merits**

Finally, Plaintiff requests compensation for 0.75 hours of work performed by Attorney Olinsky and 2.7 hours of work performed by paralegals in preparing the EAJA application, for a total of $354.91. (Doc. No. 24-4, 24-5.) In her reply brief, Plaintiff requests an additional $370.42 – representing two hours of work performed by Attorney Olinsky – for the preparation of the reply in support of the EAJA fees application in this case (Doc. No. 29), for a total request of 5.45 hours – or $725.33 – for work expended in obtaining fees in this case.

There is no dispute that "time spent preparing, presenting and trying attorney fee applications is compensable." *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986). In *Coulter*, however, the Sixth Circuit recognized that "some limitations must be placed on the size of these fees. Otherwise the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of both the civil rights case and the attorney fee case." *Id.* Accordingly, under *Coulter*, fees awarded for litigating initial fee requests are generally subject to the following limits:

> In the absence of unusual circumstances, the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary. Such guidelines are necessary to insure that the compensation from the attorney fee case will not be out of proportion to the main case and encourage protracted litigation.

*Id.*; *see also id.* at 148, 153 (noting that Congress had adopted 131 fee-shifting statutes, including the EAJA, in order to "provide economic incentive for the legal profession to try

14

meritorious cases defining and enforcing statute policies and constitutional rights in a variety of fields of legal practice . . . . Congress did not intend that lawyers . . . receive excess compensation or incentives beyond the amount necessary to cause competent legal work to be performed in these fields."). Here, this Court determined the merits of Plaintiff's case without conducting a trial or otherwise requiring work beyond the preparation of briefs. Accordingly, the 3% cap of *Coulter* applies to Plaintiff's request for fees incurred in obtaining fees, and Plaintiff shall be awarded an amount equal to 3% of the amount of fees awarded for work expended on the merits of this case for work performed on her fee application.

**D.     Summary of the EAJA Award**

In sum, Plaintiff's request for fees is DENIED in part and GRANTED in part to the following extent:

- Plaintiff shall receive attorney fees for 37.7 hours expended by counsel on the merits of the case at an hourly rate of $125.00, totaling $ 4,712.50;

- Plaintiff shall receive attorney fees for 5.4 hours expended by counsels' paralegals, at an hourly rate of $80.00, totaling $432, resulting in a total of $5,144.50, for work expended on the merits of the case; and

- Plaintiff shall receive attorney fees for three percent of the total award for work performed on the merits, or $154.34, for fees incurred in obtaining fees in this case, **for a total fee award of $5,298.84.**

**E.     To Whom the EAJA Award Shall Be Paid**

The materials in support of Plaintiff's EAJA application reflect that Plaintiff has

assigned any award of EAJA fees to counsel. (Doc. No. 24-6.) However, pursuant to *Astrue v. Ratliff*, 130 S. Ct. 2521, 177 L. Ed. 2d 91 (2010), any EAJA award should be made payable to Plaintiff and not her attorneys so that any pre-existing debt owed by Plaintiff to the government may be subject to administrative off-set. Plaintiff concurs. (Doc. No. 24.) Accordingly, counsel first shall determine whether Plaintiff owes a pre-existing debt subject to offset; if there is no pre-existing debt or the debt is less than the amount of the EAJA fee award, the balance of the EAJA fee award shall be made payable to Plaintiff's counsel per the assignment in the record.

### III. CONCLUSION

For the foregoing reasons, Plaintiff is awarded a total of **$5,298.84** to fully satisfy all reasonable attorney fees, expenses, and costs incurred under the EAJA in this case.

**IT IS SO ORDERED**.

s/ *Nancy A. Vecchiarelli*<br>
U.S. Magistrate Judge

Date: June 24, 2016